*E-FILED - 4/25/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN KUCHARSKI, | No. C 06-3969 RMW (PR) |
| Petitioner, | ORDER DENYING MOTION FOR LEAVE TO FILE AN AMENDED PETITION; ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| vs. | |
| JOANNE WOODFORD, | |
| Respondent. | (Docket No. 22) |

Petitioner, a state prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The instant petition was transferred to this court from the United States District Court for the Eastern District of California on June 27, 2006. The court ordered respondent to show cause why the petition should not be granted. Respondent has filed an answer addressing the merits of the petition, and petitioner has filed a traverse.[1]

---

[1] On September 20, 2007, petitioner filed a motion for leave to amend the petition and an amended petition raising supplemental claims pursuant to Cunningham v. California, 127 S. Ct. 856 (2007), finding that California's determinate sentencing law ("DSL") violated the Sixth Amendment because it allowed the sentencing court to impose an elevated sentence based on aggravating facts that it found to exist by a preponderance of the evidence. Id. at 860, 870-71. Petitioner alleges that he has exhausted these claims in the state court. The court concludes that plaintiff's supplemental claims in the amended petition are without merit. Even if Cunningham applied, which the court does not believe it does, it would not be applied retroactively on habeas review to petitioner's 2004 conviction and sentence

1  Having reviewed the briefs and the underlying record, the court concludes that petitioner is not
2  entitled to relief based on the claims presented and denies the petition

### BACKGROUND

On December 29, 2002, petitioner entered a Shell gas station market in Santa Rosa, selected a number of items, and approached the counter. Resp. Ex. B (People v. Kucharski, Presentence Report, Case No. SCR-32812, November 18, 2003) at 1. Instead of paying for the items, petitioner drew a revolver, pointed it at the cashier, and demanded money from the register. Id. at 2. When the victim told petitioner that he could not open the register, petitioner took the items he had selected and absconded in a car. Id. The victim was able to provide a responding police officer with the vehicle's license plate number. Id. It was determined that the vehicle was registered to an individual residing in Rohnert Park, a nearby neighborhood. Id. While en route to the address of the registered owner of the vehicle involved in the Shell station robbery in Santa Rosa, another robbery was reported at a Valero gas station in Rohnert Park. Id.

When officers arrived at the Valero station, the cashiers reported that a subject, whom they later identified as petitioner, gathered items from the store and had the cashier bag them. Id. At that point, petitioner pulled out a knife and said "[t]his is a robbery, give me everything in the register." Id. The victim refused to give petitioner any money. When petitioner attempted to leave with the bagged items, the victim threatened him with a baseball bat that he kept behind the counter. Id. Petitioner dropped the bag and fled. Id. The victim gave chase, and observed petitioner get into a burgundy colored car and drive away. Id.

Another police officer responding to the Valero station robbery spotted the suspect vehicle, and attempted to make a traffic stop. Id. The vehicle made a u-turn and drove past the officer, at which point another officer joined the chase and pursued the vehicle into a mobile

---

at issue here. Unlike the instant case, Cunningham was a decision on direct review. Because Cunningham relied heavily on the new procedural rule announced in Blakely v. Washington, 542 U.S. 298 (2004), Cunningham does not apply retroactively to convictions that were final prior to its publication. Rosales v. Horel, 2007 WL 1852186, at **2-3 (S.D. Cal. 2007); see also Fennen v. Nakayema, 2007 WL 1742339, at **6 (E.D. Cal. 2007) (if Blakey is not retroactive on collateral review, then there is no reason to find Cunningham would be retroactively applied to cases which have already become final). Therefore, the court DENIES petitioner's motion to amend the petition.

home park. When the vehicle stopped at a residence, the officer rammed it, sustaining injuries to his knee and finger. Id. at 2-3. Petitioner then entered the residence and locked himself in the bathroom, where he threatened to commit suicide. Id. After a short standoff, the officers subdued petitioner and arrested him. Id.

After petitioner's arrest, the officers searched his vehicle and found three bags of miscellaneous food items on the front seat, which were later identified as the items taken from the Shell station in Santa Rosa. Id. Petitioner was then transported to the Valero station in Rohnert Park, where the attendant positively identified him. Petitioner was taken to the Shell station in Santa Rosa, where the clerk positively identified him. Id. The officer's patrol car that rammed petitioner's vehicle sustained $3,508.65 in damage, and the individual officer injured in the collision received medical care at a cost of $421.96 to the city. Id. at 7-8.

Pursuant to a plea negotiation, petitioner pled no contest in Sonoma Superior Court to two counts of robbery (Cal. Penal Code § 211). Petitioner admitted to a prior "strike" conviction and to serving a prior prison term pursuant to California's "three strikes" law (Cal. Penal Code §§ 667(a)(1), 1170.12). On January 9, 2004, petitioner was sentenced to a term of twenty-two years in state prison and ordered to pay $3,903.61 in restitution to the victims and a $10,000 restitution fund fine.

On direct appeal, the state appellate court affirmed petitioner's sentence on March 8, 2005. The state supreme court denied a petition for review on June 8, 2005. The state supreme court denied petitioner's habeas petition on January 17, 2007. The instant petition was transferred from the Eastern District of California and filed in this court on June 27, 2006.

## DISCUSSION

**A. Standard of Review**

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under the AEDPA, a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state

court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411. Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El, 537 U.S. at 340; see also Torres v. Prunty, 223 F.3d 1103, 1107 (9th Cir. 2000). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

**B.     Petitioner's Claims**

    1.     Petitioner's Right to a Jury Trial Was Not Violated.

Petitioner claims that his right to a jury trial under the Sixth Amendment was violated by the trial court's restitution order. Petition at 5. At sentencing, the trial court imposed a

1  restitution fee of $10,000, pursuant to Penal Code section 1202.4.  Petitioner maintains that the
2  restitution order exceeds the statutory maximum, and therefore the facts supporting the
3  imposition of such a fee should have been determined by a jury, not a judge.  Petition, Ex. A
4  (People v. Kucharski, Petition for Review, (March 18, 2005)) at 3.

5       State sentencing courts must be accorded wide latitude in their decisions as to
6  punishment.  Walker v. Endell, 850 F.2d 470, 476 (9th Cir. 1987), cert. denied,
7  488 U.S. 926, and cert. denied, 488 U.S. 981 (1988).  Therefore, a federal court may not review a
8  state sentence that is within statutory limits.  See id.  However, there are exceptions under the
9  Due Process Clause and the Eighth Amendment.[2]  The constitutional guarantee of due process is
10 fully applicable at sentencing.  See Gardner v. Florida, 430 U.S. 349, 358 (1977).  A federal
11 court may vacate a state sentence imposed in violation of due process; for example, if a state trial
12 judge (1) imposed a sentence in excess of state law, see Walker, 850 F.2d at 476; see also
13 Marzano v. Kincheloe, 915 F.2d 549, 552 (9th Cir. 1990) (plea of guilty does not permit state to
14 impose sentence in excess of state law despite agreement of defendant to sentence), or (2)
15 enhanced a sentence based on materially false or unreliable information or based on a conviction
16 infected by constitutional error, see United States v. Hanna, 49 F.3d 572, 577 (9th Cir. 1995);
17 Walker, 850 F.2d at 477; accord Brothers v. Dowdle, 817 F.2d 1388, 1390 (9th Cir. 1987)
18 (factual basis required for factors when factors used to aggravate sentence).

19      In contrast, a federal court may not review a claim that a state court failed to state its
20 reasoning for a particular sentence pursuant to state law when the sentence imposed was clearly
21 within its discretion.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (failure
22 to abide by state requirement that trial court state reasons for sentencing consecutively does not
23 rise to level of federal habeas due process claim), cert. denied, 514 U.S. 1026 (1995); Branch v.

---

[2] A sentencing scheme also may implicate a specific constitutional guarantee.  See, e.g., Grisby v. Blodgett, 130 F.3d 365, 369-70 (9th Cir. 1997) (sentencing scheme that allows defendants who go to trial to receive sentence of death or life imprisonment without possibility of parole, while defendants who plead guilty can receive no more than life with possibility of parole, impermissibly penalizes defendants for exercising their Sixth Amendment right to jury trial).

1 Cupp, 736 F.2d 533, 536 (9th Cir. 1984) (same), cert. denied, 470 U.S. 1056 (1985).  This latter claim apparently fails to rise to the level of a constitutionally protected liberty interest.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).  The "statutory maximum" for Apprendi purposes is the maximum sentence a judge could impose based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the relevant "statutory maximum" is not the sentence the judge could impose after finding additional facts, but rather is the maximum he or she could impose without any additional findings.  Blakely v. Washington, 542 U.S. 296, 303-04 (2004); accord Rita v. United States, 127 S.Ct. 2456, 2466 (2007).  However, the Constitution does not require a jury to determine facts which increase the statutory minimum, but do not extend the sentence beyond the statutory maximum, even if these facts may have a substantial impact on the sentence.  Harris v. United States, 536 U.S. 545, 554-68 (2002) (upholding McMillan v. Pennsylvania, 477 U.S. 79 (1986)); accord Rita, 127 S.Ct. at 2466.  Nor does it require a jury to determine facts which allow for a sentence that is less than the mandatory minimum.  United States v. Cardenas-Juarez, 469 F.3d 1331, 1334 (9th Cir. 2006) (jury need not determine whether statutory "safety valve" exception to mandatory minimum sentence allows for decreased sentence under Federal Sentencing Act).

The state appellate court addressed petitioner's Sixth Amendment claim as follows:

> In *Apprendi v. New Jersey* (2000) 530 U.S. 466, the Supreme Court held that under the Sixth Amendment, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi,* at p. 490.)  In *Blakely, supra,* 124 S.Ct. 2531, the Court defined "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely,* at p. 2537.)  "In other words, the relevant 'statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.  When a judge inflicts punishment that the jury's verdict alone does not allow...the judge exceeds his proper authority." (*Ibid.*).
>
> Under *Blakely*, when a legislature authorizes an increased sentence only if certain facts are found to be true, the facts (except for the

> fact of a prior conviction) must be found true by a jury or admitted by the defendant before the sentence may be imposed. (*Blakely, supra,* 124 S.Ct. at pp. 2537-2538; *Apprendi, supra,* 530 U.S. at p. 490.) When, on the other hand, the legislature authorizes a sentencing *range* and commits the choice of a sentence within that range to the discretion of the sentencing judge, the judge may unilaterally determine the sentence without violating the defendant's right to a jury trial, even though the judge's exercise of discretion necessarily involves some factfinding. (*Id.* at p. 2540; *United States v. Booker* (2005) 125 S.Ct. 738, 750, maj. opn. of Stevens, J.)

Resp. Ex. F (unpublished opinion of the California Court of Appeal, First Appellate District, People v. Kucharski, Case No. A105380, (March 8, 2005)) at 2-3. The appellate court reviewed California Penal Code section 1202.4[3] governing restitution fines and concluded that petitioner's restitution fine "presents no Sixth Amendment problem." Id. at 3.

> We assume that imposition of a restitution fine constitutes a criminal penalty within the meaning of *Apprendi*. (See *People v. Hanson,* (2000) 23 Cal.4th 355, 357 [imposition of restitution fine

---

[3]The relevant portion of California Penal Code section 1202.4(b) provides:

(a)   (3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both of the following:

   (A) A restitution fine in accordance with subdivision (b).

   (B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment.

(b) In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine...

   (1) The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense, but shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony...

   (2) In setting a felony restitution fine, the court may determine the amount of the fine as the product of two hundred dollars ($200) multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted.

(f) Except as provided in subdivision (q), in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court...The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record...

> constitutes punishment for double jeopardy purposes].) The statute establishes a range of $200 to $10,000 for restitution fines and leaves it to the court's discretion to choose the fine within that range. The court need not make additional findings of fact before it may impose a fine above $200. Therefore, the statutory maximum for the fine is $10,000, not $200 as [petitioner] argues. The court has expressly held that a legislature may commit sentencing to a judge's unfettered discretion within a statutory range without violating a defendant's right to a jury trial. (*Blakely, supra,* 124 S.Ct. at p. 2540; *Booker, supra,* 125 S.Ct. at p. 750.)

Id. The appellate court found that the trial court's determination of the restitution fine was within the range authorized by the statute and did not violate petitioner's Sixth Amendment right to a jury trial. Id. at 4.

The appellate court recognized that the sentencing court utilized its discretion in determining petitioner's restitution fine within the statutory limit. Contrary to petitioner's claim, the sentencing court's imposition of a $10,000 restitution fine did not exceed the statutory maximum pursuant to Penal Code section 1202.4. Rather, as the appellate court found, the fine was within the prescribed amount ($200-$10,000) and subject to the discretion of the judge. As such, no additional facts to support the imposition of a restitution fine were required to be found by a jury. See Blakely, 542 U.S. at 303-304. Penal Code section 1202.4 provides that the restitution fine imposed by the court is "separate [from] and additional [to]" the restitution fine to be paid to "a victim of crime who incurs any economic loss as a result of the commission of a crime." Cal. Pen. Code §1202.4(b), (a)(1); fn 3, supra. Petitioner's argument that the grand total of the restitution fine of $13,903.61 exceeds the statutory maximum of $10,000 is without merit because the statutory maximum for the mandatory restitution fine does not include the "separate" victim restitution fine.[4] See id.

Accordingly, the court concludes that the state appellate court's decision was not contrary to, or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2).

---

[4] The mandatory restitution fine was set at $10,000. The "separate" victim restitution fine was $3,903.61, set pursuant to Penal Code section 1202.4(f). See fn 3, supra.

### 2. Appellate Counsel Was Not Ineffective.

Next, petitioner claims that his right to effective assistance of counsel under the Sixth and Fourteenth Amendments was violated because his appellate counsel was ineffective. Petition at 5. Petitioner maintains that appellate counsel was ineffective because counsel failed to notify petitioner of the California Supreme Court's decision denying his petition for review. See Resp. Ex. H (People v. Kucharski, Supreme Court of California, Case No. S133122, (June 8, 2005)). Petitioner contends that counsel's "failure to notify" him jeopardized his AEDPA status and deprived him of meaningful and adequate review on appeal. Petition at 3-4.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees *effective assistance* of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984) (emphasis added). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. Id.

A claim for ineffective assistance of counsel requires two separate showings. First, petitioner must show that counsel's performance was deficient, in that counsel's representation fell "below an objective standard of reasonableness." Id. at 687-688. "Judicial scrutiny of counsel's performance must be highly deferential," and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Second, petitioner must show that he was prejudiced by counsel's deficient performance. Id. at 687. Prejudice is shown where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Id. at 694.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).[5] As with trial counsel, claims of ineffective assistance of appellate counsel are

---

[5] Although the right to the effective assistance of counsel at trial is guaranteed to state criminal defendants by the Sixth Amendment as applied to the states through the Fourteenth, Evitts v. Lucey, 469 U.S. at 392, the Sixth Amendment does not address a defendant's rights on appeal;

1  reviewed according to the standard set out in Strickland v. Washington, 466 U.S. 668; Miller v.
2  Keeney, 882 F.2d 1428, 1433-34 (9th Cir. 1989). "Judicial scrutiny of counsel's performance
3  must be highly deferential," and there is "a strong presumption that counsel's conduct falls
4  within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. A
5  defendant must show that counsel's advice fell below an objective standard of reasonableness
6  and that there is a reasonable probability that, but for counsel's unprofessional errors, he would
7  have prevailed on appeal. Miller, 882 F.2d at 1434 (citing to Strickland, 466 U.S. at 688, 694;
8  United States v. Birtle, 792 F.2d 846, 849 (9th Cir. 1986)).

9      It is important to note that appellate counsel does not have a constitutional duty to raise
10 every nonfrivolous issue requested by defendant. See Jones v. Barnes, 463 U.S. 745, 751-54
11 (1983); Gerlaugh v. Stewart, 129 F.3d 1027, 1045 (9th Cir. 1997); Miller, 882 F.2d at 1434 n.10.
12 The weeding out of weaker issues is widely recognized as one of the hallmarks of effective
13 appellate advocacy. See Miller, 882 F.2d at 1434 (footnote and citations omitted). Appellate
14 counsel therefore will frequently remain above an objective standard of competence and have
15 caused his client no prejudice for the same reason – because he declined to raise a weak issue.
16 See id. A court need not determine whether counsel's performance was deficient before
17 examining the prejudice suffered by the petitioner as the result of the alleged deficiencies. See
18 Strickland, 466 U.S. at 697.

19     Petitioner claims that appellate counsel's failure to notify him regarding the California
20 Supreme Court's denial of his petition for review jeopardized his AEDPA status and deprived
21 him of meaningful review on appeal. See Pet. Ex. B at 3. Petitioner's petition for review was
22 denied on June 8, 2005. See Resp. Ex. H. Petitioner's subsequent letter to defense counsel
23 demonstrates that petitioner was somehow made aware of the California Supreme Court's denial
24 of his petition for review. See Pet. Ex F (Petitioner's letter to defense counsel, dated December
25 5, 2005). The court concludes that petitioner's claim is without merit.

---

28 the right to effective state appellate counsel is derived purely from the Fourteenth Amendment's due process guarantee. Id.

1    After a thorough review of the underlying record, this court concludes that petitioner has
2 not shown that he was prejudiced by appellate counsel's alleged failure to notify him regarding
3 the denial of his petition for review. Petitioner fails to establish that but for appellate counsel's
4 failure to notify petitioner of the California Supreme Court's decision, his AEDPA status would
5 not be in jeopardy. The fact that petitioner timely filed the instant petition, now under review in
6 this court, and that petitioner was in receipt of a copy of the denial of his petition for review,
7 demonstrate that petitioner was not prejudiced by appellate counsel's alleged failure.
8    Additionally, petitioner claims that appellate counsel failed to effectively argue all
9 meritorious issues on direct appeal, which deprived him of meaningful review on appeal.
10 Petitioner's Traverse to Answer at 3. Petitioner claims that counsel should have raised
11 arguments regarding the absence of a pre-sentence report on appeal. Pet. at 8-9. This court
12 concludes that petitioner has not shown that he was prejudiced by appellate counsel's alleged
13 failure to raise all meritorious issues on direct appeal. Counsel must represent his client to the
14 best of his or her ability, and he has the final say in deciding which issues will be brought up on
15 appeal, and which weaker issues will not. Jones v. Barnes, 463 U.S. at 751-54 (explaining the
16 importance of affording appellate counsel broad discretion in choosing which issues to pursue).
17 Defendants who are appointed counsel do not have a constitutional right to compel appointed
18 counsel to press non-frivolous points requested by the defendants. Id. at 751. Here, appellate
19 counsel reviewed the underlying record and advised petitioner that the only meritorious issue
20 presented in petitioner's case was the issue raised in the appellate brief regarding the excessive
21 restitution fine. Pet. Ex. B(2) (Defense counsel's letter to petitioner, dated September 16, 2004)
22 at 1. Petitioner has not shown that, had appellate counsel raised other issues on appeal, the result
23 of the proceeding would have been different. See Strickland, 466 U.S. at 694. As such,
24 petitioner fails to show that he was prejudiced on direct appeal by counsel's performance. The
25 state court's decision was not contrary to, or an unreasonable application of clearly established
26 federal law, nor is it an unreasonable determination of the facts in light of the evidence presented.
27 28 U.S.C. § 2254(d)(1), (2).
28 ///

## CONCLUSION

The court concludes that petitioner has failed to show any violation of his federal constitutional rights in the underlying state court proceedings. Accordingly, the petition for writ of habeas corpus is DENIED. Petitioner's motion for leave to amend the petition (docket no. 22) is DENIED. The clerk shall terminate any pending motions and close the file.

IT IS SO ORDERED.

DATED:  4/25/08

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge